UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JOHN DAVIS,<br><br>                    Plaintiff,<br><br>           v.<br><br>DEPARTMENT OF JUSTICE,<br><br>                    Defendant. | Civil Action 88-00130 (HHK) |

## MEMORANDUM OPINION

John Davis brings this action pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, seeking to compel the Federal Bureau of Investigation ("FBI") to release audiotapes recorded by the FBI during a 1979-80 undercover operation known as "BRILAB." This action is now before this court on remand from the United States Court of Appeals for the District of Columbia Circuit. The sole issue presented is the reasonableness of the FBI's efforts to determine whether the speakers on four withheld audiotapes are alive or dead.

Before the court are the parties' cross-motions for summary judgment (## 248 and 249). Upon consideration of the parties' submissions and the record on remand, the court concludes that defendant's motion must be granted and plaintiff's motion denied.

### I. BACKGROUND

Davis originally filed a FOIA request in 1986, seeking the release of 163 audiotapes recorded by the FBI during its 1979-80 BRILAB operation. The BRILAB criminal investigation and trial exposed significant bribery and racketeering links among Louisiana politicians, labor unions, and organized crime. Davis sought access to the audiotapes for a book he was writing on

the topic. When the FBI denied his request for the audiotapes, Davis brought suit.

Over the course of the past nineteen years and after repeat visits to both this court and the United Court of Appeals for the District of Columbia Circuit, Davis has whittled the number of withheld audiotapes down to four. The two speakers on these audiotapes are a "prominent" individual and an FBI informant. The FBI maintains that the two speakers on these four audiotapes may still be alive and therefore have a privacy interest that justifies withholding the audiotapes under FOIA Exemption 7(C).

Davis challenged the FBI's withholding of these four audiotapes and, in *Davis v. Dep't of Justice*, 460 F.3d 92 (D.C. Cir. 2006) ("*Davis IV*"), the D.C. Circuit agreed with him, holding that the FBI had not conducted an adequate search to determine whether the speakers are still alive. The three original search methods employed by the FBI that the circuit court found to be inadequate included a review of the FBI's institutional knowledge and the book *Who Was Who*, a review of the audiotapes themselves in an attempt to determine the speakers' birth dates, and a possible review of the Social Security Death index. *Id*. at 98-100. The circuit court remanded with instructions that the FBI "evaluate alternative methods for determining whether the speakers on the requested audiotapes are dead, and that thereafter the district court determine whether the FBI's chosen course is reasonable." *Id*. at 106.

Shortly after the decision in *Davis IV*, the FBI conducted several different and additional searches. First, the FBI searched the indices to its Central Records System and established birth dates for the two speakers. Decl. of David M. Hardy ¶ 6. The speakers' names and birth dates were then entered into *Google* and the Social Security Death Index. *Id.* Neither search provided any indication that the speakers had died. *Id.* Seven months later, the FBI ran a *Google* search

2

using the speakers' names and the term "obituaries."  *Id.* ¶ 7.  The FBI also entered the speakers' names and birth dates into a series of internet data bases, including the two suggested by the circuit court in the *Davis IV* decision – http://www.legacy.com and http://www.obituarycentral.com.  *Id*.  The additional data bases searched by the FBI were: http://www.crimelibrary.com, http://www.rootsweb.com, http://www.ancestory.com, http://www.FamilyTreeLegends.com, http://www.AncestorHunt.com, http://www.WestLaw.com, http://www.WashingtonPost.com, and http://www.Genealogy.com.  *Id*.  None of these searches yielded any evidence that the two speakers were deceased.  *Id*. ¶ 8.  Both sides now move for summary judgment on the reasonableness of the FBI's revised search.

## II.  ANALYSIS

The FBI argues that its additional efforts to determine whether the speakers are alive or dead satisfy the reasonable search standard and justify the withholding of the four audiotapes under Exemption 7(C).  Davis argues that the FBI's search efforts continue to be inadequate.  The FBI's position is well-taken.

Exemption 7(C) of the Freedom of Information Act authorizes government agencies to withhold "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . . could reasonably be expected to constitute an unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(7)(C).  In determining whether the release of particular records or information would be an "unwarranted" invasion of an individual's privacy, an agency must balance the individual's privacy interest in nondisclosure against the public interest in disclosure.  *Davis IV*, 460 F.3d at 97; *see also Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 776-77

(1989). Because an individual's "privacy interest in nondisclosure of identifying information may be diminished where the individual is deceased," *Schrecker v. Dep't of Justice*, 349 F.3d 657, 661 (D.C. Cir. 2003) ("*Schrecker II*"), an agency must attempt to ascertain whether the individual is dead or alive in order to accurately balance the competing interests. *Schrecker v. Dep't of Justice*, 254 F.3d 162, 166 (D.C. Cir. 2001) ("*Schrecker I*"). Furthermore, the agency must provide evidence of these attempts to prove that the agency reasonably balanced the competing interests. *Davis IV*, 460 F.3d at 98 (quoting *Schrecker I*, 254 F.2d at 167). Absent evidence of bad faith, the court may rely on an agency's affidavits detailing the search methods and procedures undertaken by the agency. *Citizens for Responsibility and Ethics in Washington v. Nat'l Indian Gaming Comm'n*, 467 F. Supp. 2d 40, 56 (D.D.C. 2006).

The government agency's search efforts must demonstrate "a reasonable effort to ascertain life status." *Davis IV*, 460 F.3d at 98 (quoting *Schrecker II*, 349 F.3d at 662). Though the likelihood of success is a relevant consideration, a fruitless search does not presuppose an unreasonable search. *Id.*; *Davis IV*, 460 F.3d at 105. Rather, "the proper inquiry is whether the Government has made reasonable use of the information readily available to it, and whether there exist reasonable alternative methods that the Government failed to employ." *Davis IV*, 460 F.3d at 98 (quoting *Schrecker II*, 349 F.3d at 662).

A.    **The Search Under Review in *Davis IV***

In *Davis IV*, the court held that the FBI's search efforts were unreasonably limited in scope and destined to fail. 460 F.3d at 103. Though the FBI claimed to have pursued three separate avenues of inquiry, the court found that none of them "had any likelihood of discovering whether the two individuals . . . were living or dead." *Id.* at 101. First, the FBI reviewed its

4

"institutional knowledge" and consulted a print publication to ascertain whether the speakers were alive. *Id*. at 98-99. However, the "institutional knowledge" review was limited to only the audiotapes themselves and prior FOIA requests. The print publication in question contained biographies for less than .06% of America's recently deceased. The FBI next reviewed the requested audiotapes for information about the speakers' birth dates, despite already knowing that the speakers' birth dates were not mentioned on the tapes. *Id*. at 100. Third and finally, the FBI stated that it would have checked the Social Security Death Index if it had possessed the speakers' social security numbers. *Id*. The FBI did not have these social security numbers and did nothing beyond reviewing the audiotapes to try and acquire them. Not unexpectedly, the court found this methodology wanting and questioned the efficacy of any search so limited in scope.

      The *Davis IV* court suggested that in order to conduct a more reasonable search for the speakers' birth dates or social security numbers, the FBI could look to informant files, Electronic Surveillance indices, or other internal records. *Id*. at 101. Once the FBI locates the relevant identifying information, if the FBI's internal records still shed no light on whether the speakers are dead or alive, the FBI should consider broadening its search of external sources. *Id*. at 102. For example, the court noted that the FBI could use *Google* or links to obituary sites to run internet searches based on the speakers' names. *Id*. at 102. Though not prescribing any particular search methodology, the court made it clear that the FBI had failed to avail itself of readily available alternatives and had conducted a deficient search. *Id*. at 103.

      **B.**    **The Post *Davis IV* Search**

      The FBI maintains that its supplemental efforts, undertaken after the *Davis IV* decision,

5

meet the standard for a reasonable search and that the FBI appropriately balanced the competing interests in deciding to withhold the audiotapes under Exemption 7(C).  Davis argues otherwise.

Davis claims that the FBI's internet searches were incomplete because they were not tailored to the circumstances of the case and cites five specific failings.  Pl.'s Cross-Mot. for Summ. J. and Other Relief 2-3.  First, Davis claims that obituary searches are more likely to be successful when they focus on "the place the person last resided, last worked, or was born."  *Id*. at 3.  Because the FBI did not indicate that their search was done with any geographical focus save for one search in a Washington, D.C. newspaper, Davis opines that the search was deficient.  *Id*.  Davis next finds fault with the FBI's failure to conduct searches predicated upon the speakers' birth locations, residences, and social security numbers, again suggesting that including such details would have increased the likelihood of encountering an obituary.  *Id*. 3-4.  Third, Davis criticizes the FBI for not rechecking the print publication and an internal records index that were checked during the initial round of searches.  *Id*. 4.  Fourth, Davis faults the FBI for not contacting the speakers at their last known addresses.  *Id*. 4-5.  Finally, Davis reproves the FBI for not providing a full accounting of the FBI's "other resources" which might shed some light on the speakers' status.  *Id*. 5.

Davis misconstrues the FBI's obligation.  "[T]he adequacy of an agency's search is measured by a standard of reasonableness" and is "dependent on the circumstances of the case."  *Schrecker II*, 349 F.3d at 662 (internal quotations omitted).  There is no prescribed checklist of required steps and, provided that the FBI "has made reasonable use of the alternatives available to it" and has considered reasonable alternative methods, a reviewing court shall consider the search adequate.  *Id*.  The three factors to be considered in determining whether an agency's

6

search is reasonable are "the likelihood that it will yield the sought-after information, the existence of readily available alternatives, and the burden of employing those alternatives." *Davis IV*, 460 F.3d at 105.

Here, the FBI used the speakers' birth dates and names to search eleven different internet sites. These sites included *Google* and the two sites suggested in *Davis IV*, one of which hosts "the obituary sites of more than 275 newspapers, including three Louisiana papers." *Davis IV*, 460 F.3d at 102-3. The additional eight sites included a general circulation newspaper, a law database, a crime story compilation site, and five sites related to genealogy. Several of the genealogy sites automatically included a search of the Social Security Death Index. The FBI has made a reasonable and good faith effort to determine if the speakers are deceased. The FBI has reviewed well-known, legitimate, and established internet sources and has uncovered no evidence that either speaker is deceased. Especially as one of the speakers on the requested audiotapes was a "prominent" individual, the court is confident that the FBI's search would have located any existing obituary or other confirmation of this person's passing.

Yet Davis remains unsatisfied and suggests additional searches that could have been done, including a renewed search of a print publication whose shortcomings were censured by the court in *Davis IV*. *Id*. at 99-100 (noting the tiny percentage of Americans whose biographies are included, the biased selection system, and the lag time between an individual's date of death and date of the book's publication). Davis is correct in his assessment that additional searches could have been conducted but errs in his assessment that the absence of such searches rendered the FBI's search deficient. Especially in a search involving the internet, there likely will always be an alternative or additional search that could have been done. The law, however, does not

require exhaustive efforts but reasonable ones. Because the FBI has conducted a reasonable search in an attempt to discern whether the speakers are still alive or not, it has satisfied its search obligation. .

### III.  CONCLUSION

For the foregoing reasons, the FBI's motion for summary judgment is granted and Davis' cross-motion for summary judgment is denied.  An appropriate order accompanies this memorandum.

Henry H. Kennedy, Jr.<br>
United States District Judge

Dated: December 3, 2007